IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TUBE TRANSPORT FOR AMERICA, INC.,**<br><br>    Plaintiff,<br><br>    v.<br><br>**CHAD WILKINSON,**<br><br>    Defendant. | CIVIL ACTION<br><br>NO. 20-2379-KSM |

<u>MEMORANDUM</u>

**MARSTON, J.**                                                                                         August 3, 2021

In this case, Plaintiff Tube Transport for America, Inc., alleges that Defendant Chad Wilkinson, formerly Tube Transport's Treasurer and a member of its Board of Directors, violated his fiduciary duties and committed conversion, fraud, and embezzlement, when he stole approximately $310,000 of Tube Transport's money. (Doc. No. 1.) Presently before the Court is Tube Transport's motion for default judgment. (Doc. No. 8.) For the reasons that are discussed below, Tube Transport's motion shall be granted.

I.

At this stage, the Court accepts as true the factual allegations (other than those related to damages) contained in the complaint. *See Serv. Emps. Int'l Union Local 32BJ Dist. 36 v. ShamrockClean Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa. 2018).

Tube Transport is a 501(c)(4) corporation organized for the purpose of "promot[ing] economic prosperity and social welfare by supporting alternative modes of transportation such as

the hyperloop system."[1]  (Doc. No. 1 at ¶¶ 6, 8.)  Tube Transport fundraises and lobbies "for hyperloop technology research, development, and implementation."  (*Id.* at ¶ 7.)  The company is incorporated in the District of Columbia—where it also maintains its principle place of business.  (*Id.* at ¶¶ 4, 8.)

On February 28, 2019, during Tube Transport's first organizational meeting, Wilkinson was appointed to be one of Tube Transport's three directors and its Treasurer.  (*Id.* at ¶ 9.)  As a director and officer, Wilkinson had fiduciary duties to Tube Transport.  (*Id.* at ¶ 15.)  As Treasurer, he was responsible for creating and maintaining an accounting system, tracking expenditures, paying bills, and managing Tube Transport's bank account.  (*Id.* at ¶¶ 16–17.)  Wilkinson had sole control of Tube Transport's funds, bank account, checkbook, and debit card.  (*Id.* at ¶¶ 18–19.)  Additionally, as a Tube Transport fiduciary, Wilkinson was responsible for ensuring that any "payments and distributions" the company made were "in furtherance of [Tube Transport's] non-profit purposes."  (*Id.*)  Because Tube Transport is a non-profit corporation, Wilkinson was entitled to "reasonable" pay "for services rendered," but was not entitled to substantial benefit or profit by dint of his position.  (Doc. No. 1-1 at p. 1.)

Unfortunately, Wilkinson breached his fiduciary duties.  During his tenure as Tube Transport's Treasurer, Wilkinson withdrew or spent money from Tube Transport's bank account 1,211 times (Doc. No. 15-1 at ¶ 12); only two of these transactions were approved by Tube

---

[1] A hyperloop system is "a sealed system of tubes through which a pod may travel free of air resistance or friction conveying passengers or objects at ultra-high speed while being very efficient and thereby drastically reducing travel times."  (Doc. No. 1 at ¶ 6.)  For a fuller description of what hyperloops are and how they function, see Alex Davies, *The WIRED Guide to Hyperloop*, WIRED (Feb. 1, 2018, 9:26 AM), https://www.wired.com/story/guide-hyperloop/.

Transport's Board of Directors (*id.* at ¶ 13; Doc. No. 1 at ¶¶ 29–30).[2]  Wilkinson used the money to pay for trips to "various restaurants, bars, and other entertainment facilities."  (Doc. No. 1 at ¶ 28.)  The money Wilkinson spent was "far in excess of an appropriate use of corporate funds," was "without any business purpose," and, indeed, was purely "personal in nature."  (*Id.* at ¶¶ 28, 31.)  In total, Wilkinson misappropriated $307,063.25 of Tube Transport's money.  (Doc. No. 15-1 at ¶ 15.)[3]

Wilkinson resigned from his position as Treasurer on January 27, 2020.  (Doc. No. 1 at ¶ 14.)[4]  It was only after Wilkinson's resignation that Tube Transport became aware of the full extent of his misfeasance.  (*See id.* at ¶¶ 22, 25.)

On May 20, 2020, Tube Transport filed this action, seeking to recoup its damages plus interest, as well as costs and punitive damages.  (*Id.* at p. 8.)  In their complaint, Tube Transport asserts causes of action for breach of fiduciary duty, conversion, fraud, and embezzlement.  (*Id.* at ¶¶ 35–58.)  On August 3, 2020, Tube Transport served Wilkinson at his apartment in West Chester, Pennsylvania.  (Doc. No. 6 at p. 1.)  On August 25, 2020, after Wilkinson failed to appear or otherwise defend this action, Tube Transport requested a default be entered against him (Doc. No. 7), which the Clerk of Court entered.  Tube Transport attempted to effect personal service of the request for default upon Wilkinson, but when the private investigator went to Wilkinson's apartment, no one answered the door—though the investigator reported that he

---

[2] It appears that Wilkinson was able to escape detection because he changed the mailing address for Tube Transport's bank statements from Tube Transport's address to his own personal address.  (*See* Doc. No. 1 at ¶¶ 20–21.)

[3] The Complaint avers that Wilkinson "stole in excess of $310,000."  (Doc. No. 1 at ¶ 34.)  However, the Court uses the figure identified in the June 22, 2021 affidavit of Travis Brown, Tube Transport's President and Director (*see* Doc. No. 15-1 at ¶ 16), as it is the smaller, more precise, and last-calculated damages amount.

[4] The Complaint does not indicate whether Wilkinson also resigned as a director at this time.

3

could hear movement inside. (Doc. No. 8-2 at ¶ 10; *id.* at p. 4.) The investigator left notice outside of Wilkinson's door, and Tube Transport also mailed it to him via regular and certified mail. (*Id.* at ¶ 10.)

Tube Transport filed its motion for default judgment on September 8, 2020. (Doc. No. 8.) On June 3, 2021, the Court ordered a default judgment hearing, and directed Tube Transport to serve the order, its motion for default judgment, and its affidavit detailing its claimed attorneys' fees and costs upon Wilkinson by personal service, email, and certified mail, return receipt requested. (Doc. No. 12.) Pursuant to the Court's order, Tube Transport attempted to serve Wilkinson through all three means. It received no response to its email, but also did not receive a bounce-back message. (Doc. No. 13 at ¶ 2; Doc. No. 13-1 at p. 2; Draft Hr'g Tr. at 4:7–17.) Tube Transport also attempted to serve Wilkinson via certified mail, return receipt requested; this attempt also proved unfruitful. (*See* Doc. No. 13 at ¶ 3; Doc. No. 13-2 at pp. 2–5.) And, personal service, too, was unsuccessful: Tube Transport's process server was informed that Wilkinson had abandoned his apartment, and that his landlord did know where to find him.[5] (Doc. No. 13 at ¶ 4; Doc. No. 13-3 at p. 2; Draft Hr'g Tr. at 4:1–6.)

The Court held oral argument on Tube Transport's motion for default judgment on June 23, 2021. Wilkinson did not appear at this hearing. At the hearing, Tube Transport presented evidence establishing that it had suffered damages in the amount of $307,063.25 and had expended $25,495.59 in attorneys' fees and costs which it sought to recover from Wilkinson, bringing the total amount it was seeking in judgment to $332,558.84. (Draft Hr'g Tr. at 7:17–23,

---

[5] Indeed, the leasing manager at Wilkinson's former apartment complex explained that Wilkinson owes the complex $22,000, and requested that, if the process server was able to locate Wilkinson, the process server "give [the leasing manager] a call." (Doc. No. 13-3 at p. 2.)

4

9:8–21, 10:23–11:5; *see also* Doc. No. 13-2 at ¶ 12; Doc. No. 15-1 at ¶¶ 15–16.) Subsequently, Tube Transport withdrew its request for attorneys' fees and costs. (Doc. No. 17 at p. 1.)

II.

"After a clerk enters default pursuant to Federal Rule of Civil Procedure 55(a) against a party that has 'failed to plead or otherwise defend' an action, the party may be subject to entry of a default judgment." *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 634 (quoting Fed. R. Civ. P. 55(a)). The clerk may enter default judgment in a plaintiff's favor if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). The decision to enter default judgment pursuant to Rule 55 "is left primarily to the discretion of the district court." *Perez v. Kwasny*, Civil Action No. 14-4286, 2016 WL 558721, at *2 (E.D. Pa. Feb. 9, 2016) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)).

When the plaintiff files a motion to enter default judgment, the Court considers the three factors outlined by the Third Circuit in *Chamberlain v. Giampapa*: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)); *see also, e.g.*, *Walsh v. Satori Grp., Inc.*, Civil Action No. 20-3906-KSM, 2021 WL 2072237, at *3 (E.D. Pa. May 24, 2021). However, before turning to the *Chamberlain* factors, the Court must first "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in

5

default does not admit mere conclusions of law." *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 635 (quotation marks omitted).[6]

III.

Tube Transport asserts claims against Wilkinson for (1) breach of fiduciary duty, (2) conversion, (3) fraud, and (4) embezzlement. (Doc. No. 1 at ¶¶ 35–58.) The Court addresses each claim in turn.

Tube Transport's first claim is for breach of fiduciary duty. Under Pennsylvania law, a plaintiff asserting that the defendant has breached his or her fiduciary duties must prove that (1) the defendant owed the plaintiff a fiduciary duty, (2) that the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit, and (3) that the plaintiff suffered an injury as a result of defendant's breach of his or her fiduciary duty. *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. Ct. 2020).[7] Here, Tube Transport has submitted its articles of incorporation, which make clear that the company is a non-profit, and that its directors and officers are not entitled to substantial personal benefit beyond a reasonable

---

[6] In addition, courts typically consider the six factors outlined in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984) "when a plaintiff moves under Rule 55(b) for a default judgment as a sanction for failure to plead or otherwise defend." *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 (3d Cir. 1990); *see also Perez*, 2016 WL 558721, at *2. However, the Court finds that it is unnecessary to consider the *Poulis* factors in this case, as Wilkinson has not even entered an appearance in this matter. *See Anchorage Assocs.*, 922 F.2d at 177 n.9; *Walsh*, 2021 WL 2072237, at *3 n.3 (collecting cases).

[7] The Court notes that, while Tube Transport is organized under the laws of the District of Columbia, its articles of incorporation are silent as to what law governs the conduct of its directors and officers. (*See generally* Doc. No. 1-1.) However, while an argument can be made that District of Columbia law governs this case, the Court need not decide this issue with respect to Tube Transport's breach of fiduciary duty claim, as a plaintiff asserting a breach of fiduciary duty under District of Columbia law must prove the same elements as a plaintiff asserting the same claim under Pennsylvania law. *See Gov't of Rwanda v. Rwanda Working Grp.*, 227 F. Supp. 2d 45, 64 (D.D.C. 2002); *see also Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (where the law of two jurisdictions is the same, courts need not conduct a choice of law analysis); *Am. Guar. & Liab. Ins. Co. v. Law Offices of Richard C. Weisberg*, _ F. Supp. 3d _, 2021 WL 915425, at *6 (E.D. Pa. 2021) (same).

salary by virtue of their position. (Doc. No. 1-1 at p. 1.) Nonetheless, Wilkinson, who as a Tube Transport director and officer owed the company a fiduciary duty, misappropriated $307,063.25 of Tube Transport's funds, solely for his own personal benefit. (Doc. No. 1 at ¶¶ 36–40; Doc. No. 15-1 at ¶¶ 15–16.) There can be no question that Tube Transport was harmed by this financial loss. Therefore, Tube Transport has stated a legitimate cause of action against Wilkinson for breach of fiduciary duty.

Tube Transport's second claim is for conversion. Under Pennsylvania law, "[c]onversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification." *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2003).[8] "Money may be the subject of conversion." *Id.* Here, Tube Transport has established that Wilkinson deprived them of their money, without their consent, and without permission or other justification. (Doc. No. 1 at ¶¶ 43–46.) Therefore, Tube Transport has stated a legitimate cause of action against Wilkinson for conversion.

Third, Tube Transport claims that Wilkinson committed fraud. Under Pennsylvania law, a plaintiff has stated an action for common law fraud if it shows that the defendant made a knowingly or recklessly false representation which is material to the transaction at hand, with the intent of misleading the plaintiff into relying on the representation, which the plaintiff did justifiably rely on, to its detriment. *Milliken v. Jacono*, 60 A.3d 133, 140 (Pa. Super. Ct. 2012).[9] Here, Tube Transport has established that, as its treasurer, Wilkinson was responsible for

---

[8] As with the breach of fiduciary duty claim, District of Columbia law requires proof of the same elements to establish conversion as does Pennsylvania law. *See Gov't of Rwanda*, 227 F. Supp. 2d at 62.

[9] District of Columbia law requires proof of the same elements. *Jericho Baptist Church Ministries, Inc. (D.C.) v. Jericho Baptist Church Ministries, Inc. (Md.)*, 223 F. Supp. 3d 1, 9–10 (D.D.C. 2016).

providing accurate reports of the company's financial situation to the Board of Directors. (Doc. No. 1 at ¶ 49; Doc. No. 1-1 at p. 4.) Instead, he intentionally provided false information, which did not accurately reflect Tube Transport's finances. (Doc. No. 1 at ¶¶ 50–51.) Wilkinson intended that Tube Transport would rely on his misrepresentations so that his theft would go unnoticed, and, because he had sole control of the company's bank account and bank statements and because the company had no reason to disbelieve him, it did rely on his inaccurate information when making budgeting and spending decisions. (*Id.* at ¶¶ 18–23, 52–53.) Tube Transport suffered damages as a result of its reliance on Wilkinson's misrepresentations. (*Id.* at ¶ 54.) Therefore, Tube Transport has stated a legitimate cause of action against Wilkinson for fraud.

Finally, Tube Transport's fourth claim is for embezzlement. As to this claim, Tube Transport fails to state a legitimate cause of action as neither Pennsylvania nor the District of Columbia recognizes embezzlement as a tort. *See Amariglio v. Nat'l R.R. Passenger Corp.*, 941 F. Supp. 173, 180 (D.D.C. 1996); *Halifax Area Joint Sch. Sys. v. Chaundy*, 29 Pa. D. & C. 2d 729, 736 (Pa. Ct. of C.P., Dauphin Cnty. 1962).

Having concluded that Tube Transport has stated three legitimate causes of action against Wilkinson, the Court now turns to whether the *Chamberlain* factors weigh in favor of granting the company default judgment. They do.

First, Tube Transport would be prejudiced if default judgment is denied, because they will not be able to recover the $307,063.25 that Wilkinson stole from them. *See Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637 ("First, Plaintiffs will certainly be prejudiced if default judgment is denied, as Plaintiffs have not yet received the withdrawal liability that they are owed.").

Second, Wilkinson does not appear to have a litigable defense. As discussed above, Tube Transport's facts establish causes of action for breach of fiduciary duty, conversion, and fraud. Wilkinson stole $307,063.25 from Tube Transport and Tube Transport was damaged by this theft. Because Wilkinson has not filed an answer, there are no facts to suggest that Tube Transport is not entitled to recover its damages. *Cf. Stevens v. Wiggins*, Civ.A. No. 90-7038, 1991 WL 152960, at *2 (E.D. Pa. Aug. 6, 1991) ("A defendant establishes a meritorious defense when defendant's answer, if established at trial, would constitute a complete defense to the action." (quotation marks omitted)). In addition, the Court sees no issues on the face of the complaint with jurisdiction, venue, or the statute of limitations.

Third, the Court finds that Wilkinson's delay is due to his own culpable conduct. Wilkinson was personally served with the complaint, but has knowingly failed to enter an appearance or to otherwise defend this case. (Doc. No. 6 at p. 1.) Likewise, despite receiving notice of the default judgment hearing via email, Wilkinson failed to respond to Tube Transport's counsel or to appear at the hearing. (Doc. No. 13 at ¶ 2; Doc. No. 13-1 at p. 2; Draft Hr'g Tr. at 4:7–17.) *See Kelly M. v. Luzerne Intermediate Unit*, 71 F. App'x 116, 118 (3d Cir. 2003); *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637.

"Having determined that Plaintiffs are entitled to entry of default judgment, the Court must calculate the proper amount of damages." *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637. Tube Transport has proven that it has suffered damages of $307,063.25, which it is entitled to recover in full. (Doc. No. 15-1 at ¶¶ 15–16.) Additionally, Tube Transport has withdrawn its request for attorneys' fees (Doc. No. 17), so the Court need not assess that portion of the company's motion.

IV.

Because Tube Transport has stated a legitimate cause of action for breach of fiduciary duty, conversion, and fraud, and because the *Chamberlain* factors weigh in favor of granting default judgment, Tube Transport's motion is granted, and judgment is entered in favor of Tube Transport in the amount of $307,063.25.

An appropriate Order follows.